UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| 122261 FONDREN, LLC, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-09-4074 |
| § | |
| RIVERBANK REALTY GP, LLC, § | |
| ALLEN GROSS, and § | |
| GFI MANAGEMENT SERVICES, INC., § | |
| § | |
| *Defendants*. § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 11. After considering defendants' motion, plaintiff's response, defendants' reply, and the applicable law, the motion is DENIED.

**I. BACKGROUND**

Plaintiff 12261 Fondren, LLC ("12261 Fondren"), sues both in its individual capacity and derivatively on behalf of Riverbank Realty, LP. Dkt. 1 at 1. 122261 Fondren alleges that Riverbank Realty, GP, LLC, Allen Gross, and GFI Management Services, Inc. ("GFI"), breached contractual and fiduciary duties. Dkt. 1 at 1. The following facts are alleged by 122261 Fondren in its complaint: Gross served as guarantor on a commercial real estate loan amounting to $8,600,000.00, and a 320-unit apartment complex in Houston, Texas, secured that loan. Dkt. 1 at 1–2. As a result, Riverbank Realty, LP, was indebted on a promissory note, dated March 7, 2006. Dkt. 1 at 4. Gross and Riverbank Realty, LP, defaulted on this loan. Dkt. 1 at 2, 6. Due to these defaults, the noteholder accelerated the maturity date and demanded payment of the balance on May 29, 2009.

Dkt. 1 at 7.  After acceleration, the parties agreed to the designation of a court-appointed receiver on July 10, 2009, and the property was sold at public auction on December 1, 2009.  Dkt. 1 at 8.

122261 Fondren contends that Gross and Riverbank Realty, LP, failed to perform contractual duties under the guarantee.  Dkt. 1 at 2, 6.  122261 Fondren also claims that Gross and Riverbank Realty GP, LLC, breached fiduciary duties to Riverbank Realty, LP. Dkt. 20–22.  Specifically, 122261 Fondren maintains that defendants violated their duty of care by failing to pay rental amounts and other revenues to the noteholder and allowing the property to waste following Hurricane Ike.  Dkt. 1 at 20.  122261 Fondren also asserts defendants violated their duty of loyalty by remitting payments to GFI while the property deteriorated.  Dkt. 1 at 21.  In addition, 122261 Fondren pleads that GFI both aided and abetted and conspired with Gross and Riverbank Realty GP to commit breaches of fiduciary duties.  Dkt. 1 at 22–23.  Defendants now move for 12(b)(6) partial dismissal for failure to state a claim upon which relief can be granted on the issues of derivative cause of action, breach of fiduciary duties of loyalty and care, aiding and abetting, conspiracy, and alter ego.  Dkts. 10, 11.

## II. STANDARD OF REVIEW

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in its favor.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160 (1993); *United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267 (1991).  The court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th

Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir.1991)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99 (1957); *Bonner v. Henderson*, 147 F.3d 457, 459 (5th Cir. 1998) (quoting *Rubinstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994) (citation omitted)). Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737–38 (S.D. Tex. 1998).

Motions to dismiss for failure to state a claim are viewed with disfavor and rarely granted. *Doss v. S. Cent. Bell Tel. Co.*, 834 F.2d 421, 424 (5th Cir. 1987) (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982)). The function of a complaint under the Federal Rules is to give the defendant fair notice of plaintiff's claim and the grounds upon which plaintiff relies. *Id.* (citing *Conley*, 355 U.S. at 47). When presented with a Rule 12(b)(6) motion to dismiss, the district court must examine the complaint to determine if the allegations provide for relief on any possible theory. *Id.*

### III. ANALYSIS

**A. 122261 Fondren's Derivative Cause of Action**

In evaluating a diversity suit, federal courts apply the choice-of-law rules of the forum state. *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990). Both Riverbank Realty, L.P. and Riverbank Realty GP, LLC, are Delaware corporations. Dkts. 1 at 3, 11 at 7. Texas applies the "internal affairs doctrine," wherein the "internal affairs of the foreign corporation, 'including but

not limited to the rights, powers, and duties of its board of directors and shareholders and matters relating to its shares,' are governed by the laws of the jurisdiction of incorporation." *Hollis v. Hill*, 232 F.3d 460, 465 (5th Cir. 2000) (quoting Tex. Bus. Corp. Act Ann. art. 8.02(A) (Vernon 1980)). Hence, Delaware law controls regarding the derivative nature of the suit.

122261 Fondren asserts derivative causes of action against defendants, suing in its creditor capacity as a beneficiary during Riverbank Realty, LP's insolvency. Dkt. 1 at 2. Defendants claim that 122261 Fondren has "attempted to cast its claims as derivative in nature," but that they are essentially direct claims. Dkt. 11 at 10–11. The court disagrees. In the seminal *Gheewalla* case, the Delaware Supreme Court addressed the ability of creditors to bring direct and derivative breach of fiduciary duty actions against insolvent debtor corporations as beneficiaries in place of shareholders. *North American Catholic Education Programming Foundation, Inc. v. Gheewalla,* 930 A.2d 82, 101–02 (Del. 2007). The court held that, while no direct claims for breaches of fiduciary duty may be asserted under Delaware law by creditors against insolvent corporations or corporations operating in the zone of insolvency, creditors could properly assert derivative actions on behalf of the insolvent entity. *Id.*. Here, 122261 Fondren has put forward derivative claims for breaches of fiduciary duty as creditors on behalf of an insolvent corporation. Dkt. 1 at 2. This is precisely the situation endorsed by the Delaware Supreme Court in *Gheewalla. Gheewalla*, 930 A.2d at 103 ("Creditors may . . . protect their interest by bringing derivative claims on behalf of the insolvent corporation . . . .").

Defendants cite *Torch Liquidating Trust v. Stockstill* as a similar complaint necessitating dismissal, but that case is clearly distinguishable. In *Torch*, the plaintiff amended its complaint following the Delaware Supreme Court's decision in *Gheewalla*, "replac[ing] nearly all of its prior

references to 'creditors' with new references to 'creditors and shareholders' and sought damages on behalf of creditors and shareholders." *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 382 (5th Cir. 2009). In affirming the district court's dismissal, the court noted that the complaint failed to allege any "actual, quantifiable damages suffered by [plaintiff]." *Id.* at 390. No such circumstances exist in this case. Here, 122261 Fondren proffers a derivative action for alleged breaches of fiduciary duty as creditors on behalf of an insolvent corporation, rather than initially seeking direct damages and then altering the claim at a later date. Dkt. 1 at 2. Further, 122261 Fondren has set forth specific monetary damages in the amount of $6,900,000.00 with regards to both breaches of fiduciary duty of care and loyalty. Dkt. 1 at 20, 22. Therefore, 122261 Fondren has sufficiently pled derivative claims.

## B. 122261 Fondren's Breach of Loyalty Claim

In its capacity as creditor on behalf of an insolvent entity, 122261 Fondren alleges breach of the fiduciary duty of loyalty, contending that defendants failed to properly pay moneys owed under the guaranty agreement to the noteholder and allowed the property to waste following Hurricane Ike. Dkt. 1, 20–22. Under the "internal affairs doctrine," matters relating to the internal workings of corporations and the duties of directors and shareholders are governed by laws of the state of incorporation. *Hollis v. Hill*, 232 F.3d 460, 465 (5th Cir. 2000). Here, creditors of the insolvent corporation take on the beneficiary status normally reserved for shareholders and assert derivative claims on behalf of the corporation. *Gheewalla*, 930 A.2d at 102. These claims of breaches of fiduciary duty are therefore governed by Delaware law.

Defendants claim that the payments to GFI were lawfully owed, and that as a result 122261 Fondren has failed to state a claim. Dkt. 11, 22–23. The court again disagrees. The duty of loyalty

5

demands that the best interests of the corporation and its beneficiaries takes precedence over that of the individual director. *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). Corporate decisions involving either a direct or indirect interest on the part of a particular director may implicate the duty of loyalty. *In re ALH Holdings*, 675 F. Supp. 2d 462, 482 (D. Del. 2009). "Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith." *Stone* ex rel. *AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (internal footnote omitted). 122261 Fondren asserts that defendants were contractually obligated to pay all rents on the property to the noteholder. Dkt. 1 at 21. 122261 Fondren contends that Gross, in failing to fulfill this obligation, benefitted personally from rental payments to GFI, a situation "involv[ing] . . . a director appearing on both sides of a transaction [and] . . . receiving a personal benefit from a transaction not received by the shareholders generally." *Id*. at 362. 122261 Fondren, as creditor to the insolvent Riverbank Realty, LP, would be directly impacted as a beneficiary in the place of shareholders due to this breach. *Gheewalla*, 930 A.2d at 101–02. 122261 Fondren has therefore properly stated a claim for breach of duty of loyalty.

### C. 122261 Fondren's Breach of Care Claim

In its capacity as creditor on behalf of an insolvent entity, 122261 Fondren also maintains breach of fiduciary duty of care, averring that defendants allowed the property to waste and violated contractual obligations requiring all rents and revenues to be paid to the noteholder. Dkt. 1 at 20. Defendants urge that 122261 Fondren has failed to state a claim because 122261 Fondren failed to detail the decision-making process ordinarily protected under the business judgment rule, and that 122261 Fondren has an alternate direct claim for waste on the guaranty agreement. Dkt. 11 at

17–20. The court again disagrees. Directors of corporations, in properly fulfilling their duty of care, must consider all available information that is "reasonably available," and that process is "actionable only if grossly negligent". *Brehm v. Eisner*, 746 A.2d 244, 259 (Del. 2000). Although defendants submit that 122261 Fondren has neglected to describe the alleged business decision "process" in this instance, 122261 Fondren correctly points out that the complaint stresses that improper payments under the guaranty agreement caused the specified damages. Dkt. 1 at 20. Violation of this contractual obligation would constitute an unlawful act and vitiate the fiduciary duty. *In re Walt Disney Co. Derivative Litig.*, 905 A.2d 27, 67 (Del. 2006) ("A failure to act in good faith may be shown . . . where [a] fiduciary acts with intent to violate applicable positive law."). Further, a plaintiff in this type of derivative suit must only present particular facts that raise a reasonable doubt that the alleged corporate action resulted from ordinary business judgment. *Brehm*, 746 A.2d at 254–55 (Del. 2000). 122261 Fondren has pled sufficiently in this regard, alleging self-interested acts that led to waste of the property, which in turn harmed the creditors as beneficiaries of the insolvent corporation. Dkt. 1 at 20. Defendants' other grounds for dismissal—that 122261 Fondren has a direct claim for waste under the guaranty agreement—also fails to withstand scrutiny. 122261 Fondren's direct claims under the contract do not impugn those claims asserted derivatively by the creditor as a beneficiary on behalf of the insolvent corporation, as they are distinct and separate. *See Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348, 351 (Del. 1988) (distinguishing between derivative actions by beneficiary shareholders brought on behalf of corporations and direct actions brought by beneficiary shareholders due to independent causes of action). 122261 Fondren has therefore properly asserted a claim for breach of duty of care.

## D. 122261 Fondren's Claims of Aiding and Abetting, Conspiracy, and Alter Ego

Defendants premise their 12(b)(6) motions to dismiss 122261 Fondren's claims of aiding and abetting and conspiracy on the lack of a "viable claim for breach of fiduciary duty." Dkt. 11 at 23. As 122261 Fondren has properly pled claims for breach of the fiduciary duties of loyalty and care, defendants' motions to dismiss the claims of aiding and abetting and conspiracy are denied.

122261 Fondren has also sufficiently pled an alter ego claim. The parties agree that New York law controls for the alter ego claim. Dkts. 11 at 19, 13 at 23. In order to demonstrate an alter ego under New York law, it must be shown that the owner exercised total domination of the corporation with regards to the implicated transaction and that the owner utilized this domination to commit alleged wrongs resulting in injury. *Morris v. N.Y. State Dep't of Taxation and Finance*, 623 N.E.2d 1157, 1160–1161 (N.Y. 1993). "[P]iercing the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." *Id.* at 1160. 122261 Fondren alleges Gross is the "chief executive officer, chairman, secretary, chief financial officer, president, and director of GFI," and that Gross neglected contractually obligated payments while continuing to funnel money to GFI. Dkt. 1 at 17, 19–20. This demonstrates both domination and subsequent injury due to this domination. 122261 Fondren has pled sufficiently regarding its alter ego claim. *See Thompson-CSF, S.A. v. American Arbitration Ass'n* 64 F.3d 773, 777–78 (2d Cir. 1995) ("Veil piercing determinations are fact specific and differ with the circumstances of each case.") (internal quotations and brackets omitted).

## V. CONCLUSION

Defendants' motion for partial dismissal as to the derivative cause of action, fiduciary duties of care and loyalty, aiding and abetting, conspiracy, and alter ego claims is DENIED.

It is So ORDERED.

Signed at Houston, Texas on April 29, 2010.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY